Eastern District of Kentucky
FILED
OCT 29 2020
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL ACTION NO. 3:20-CR-15-GFVT

UNITED STATES OF AMERICA                                          PLAINTIFF

V.                              **PLEA AGREEMENT**

TAILOR MADE COMPOUNDING LLC                                       DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 2 of the Information, charging a misdemeanor violation of 21 U.S.C. § 331(d), unlawful distribution of unapproved new drugs.

2. The essential elements of 21 U.S.C. § 331(d) are:

    (a) The defendant introduced or delivered for introduction into interstate commerce any article; and

    (b) In violation of 21 U.S.C. § 355, prohibiting the introduction of new drugs unless an approval of an application filed with respect to such drugs is effective.

3. As to Count 2 of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) Tailor Made Compounding LLC ("TMC") was a 503(A) compounding pharmacy located in Nicholasville, Kentucky, in the Eastern District of Kentucky, and subject to the provisions of Kentucky Revised Statutes, Chapter 315 and the Food, Drug, and Cosmetic Act ("FDCA"). The Kentucky Board of Pharmacy, located in Frankfort, Franklin County, in the Eastern District of Kentucky, is statutorily obligated to oversee the implementation of K.R.S. Chapter 315 and to

regulate pharmacists, pharmacies, wholesale drug distributors, and others operating in the industries covered by Chapter 315. Following an on-site inspection by the Kentucky Board of Pharmacy, TMC received its Kentucky pharmacy license in November 2015.

(b) The FDCA regulates a broad range of products, including food, drugs, tobacco, and medical devices. The FDCA defines "drug" broadly to include, "(A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C)." *See* 21 U.S.C. § 321(g)(1). The FDCA prohibits any business or person from introduction or delivery for introduction into interstate commerce of any article in violation of section 344, 350d, 355, or 360bbb–3 of Title 21. *See* 21 U.S.C. § 331(d). Title 21, Section 355 prohibits the introduction into interstate commerce of any new drug, unless an approval of an application with respect to such drug is effective. *See* 21 U.S.C. § 355. A new drug is defined as any drug the composition of which is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in their labeling. *See* 21 U.S.C. § 321(p).

(c) Selective androgen receptor modulators ("SARMS") are synthetic chemicals designed to mimic the effects of testosterone and other anabolic steroids. Products containing SARMS are often marketed and sold for body-building purposes, to increase muscle mass. FDA issued a public safety alert in 2017 warning consumers about ingesting products containing SARMS because these products had been linked to life-threatening reactions, including liver toxicity, and that these products have the potential to increase the risk of heart attack and stroke. TMC knew SARMS were drugs that were not approved and had not been subjected to the FDA's new drug application process. Between October 25, 2018 and April 1, 2020, TMC sold SARMS in interstate commerce, in addition to BPC 157, Cerebrolysin, CJC 1295, DSIP, Epitalon, GW 501516, Ipamorelin, LGD-4033, LL-37, Melanotan II, MK 677, PEG-MGF, Selank, and Semax, all of which TMC knew were considered unapproved new drugs under the FDCA. In 2019, TMC received $1,788,906.82 in sales for these products.

4. The statutory punishment for the charge in Count 2 of the Information, for an organizational defendant, is probation for not more than 5 years, a fine of not more than $1,000, and a term of supervised release of not more than 1 year. A mandatory special assessment of $125 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the unlawful interstate sales of new drugs BPC 157, Cerebrolysin, CJC 1295, DSIP, Epitalon, GW 501516, Ipamorelin, LGD-4033, LL-37, Melanotan II, MK 677, PEG-MGF, SARMS, Selank, and Semax.

    (c) Restitution is not applicable pursuant to U.S.S.G. § 8B1.1.

    (d) The fine should be determined pursuant to U.S.S.G. § 8C2.1.

    (e) Pursuant to U.S.S.G. § 2N2.1(a), the base offense level is 6.

    (f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K. The Defendant also will not seek a sentence below the advisory sentencing guidelines range as determined by the Court at sentencing.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Information and will execute any documents necessary for this forfeiture. The Defendant also agrees to the imposition of a money judgment in the amount listed in the forfeiture allegation of the Information. The Defendant also agrees the United States can prove the required nexus for forfeiture.

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. A representative of the Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any

monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

12. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of

Kentucky, unless the Defendant breaches this Agreement. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 10/29/20      By: _____
                         Kate K. Smith
                         Assistant United States Attorney

Date: 10/29/20          _____
                         Tailor Made Compounding LLC
                         Defendant

Date: 10/29/20                                  /s/ Brandon W. Marshall
                                                Brandon W. Marshall
                                                Attorney for Defendant


**APPROVED**, this _____ day of _____, _____.


                                                _____
                                                UNITED STATES DISTRICT JUDGE