UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL CASE NO: 3:20-CR-15-GFVT-2

UNITED STATES OF AMERICA            PLAINTIFF

v.

JEREMY DELK and
TAILOR MADE COMPOUNDING, LLC            DEFENDANTS

## DEFENDANT TAILOR MADE COMPOUNDING'S SENTENCING MEMORANDUM

Comes Tailor Made Compounding, LLC, by and through its undersigned counsel and authorized representative, and files this sentencing memorandum in support of its request for a sentence including a $1,000 fine, a term of unsupervised probation, and a $1,788,906.82 forfeiture.[1] This memorandum is submitted pursuant to 18 U.S.C. § 3553(a), which directs the Court to consider the history and characteristics of the Defendant and the nature and circumstances of the offense, among other factors, to fashion a sentence that is sufficient, but not greater than necessary to comply with the goals set forth in the statute.

Tailor Made Compounding, LLC (TMC) was founded as a Kentucky limited liability company in December 2013. At all relevant times, TMC was located in Nicholasville, Kentucky and operated as a compounding pharmacy. The instant matter is TMC's first and only criminal

---

[1] The Court has already issued a forfeiture money judgment in the prayed-for amount at DE 18.

charge. At its zenith, TMC provided good-paying jobs to a little less than 100 Central Kentuckians who served as pharmacists, chemists, laboratory technicians, managers, and customer service representatives.

As TMC admitted in connection with its misdemeanor guilty plea by information, from late-2018 to early-2020 it sold quantities of a handful of "new drugs" that the FDA had not approved for distribution in the United States. True to its plea agreement commitment to pay the Government every penny TMC received by virtue of these sales, the company has *already paid the entirety* of its $1,788,906.82 money judgment via two tranches – one on the date of the guilty plea and a more recent payment made on February 9, 2021.

In addition to the seven-figure forfeiture, TMC hereby concedes that a $1,000 fine is appropriate for its misdemeanor conviction. TMC's counsel intends to appear at the upcoming sentencing hearing prepared to pay such a fine to the Clerk of the Court immediately after imposition of sentence.

With the fine and forfeiture already addressed and restitution not being an issue in this case, that leaves the Court to grapple chiefly with the practical realities of a term of probation and consideration of what safeguards are needed to ensure TMC's future compliance with the law. The Congressional Research Service once quipped in a footnote in a report to Congress concerning corporate prosecutions, "Corporations cannot be incarcerated. Nor can they be put to death. Of course, government action, public scorn, or the two in concert may wipe them out of existence."[2] Implied in the researcher's tongue-in-cheek remark is the recognition that terms of probation can

---

[2] "Corporate Criminal Liability: An Overview of Federal Law" at FN 133, Congressional Research Service – Charles Doyle (October 30, 2013). https://fas.org/sgp/crs/misc/R43293.pdf (Last Visited December 14, 2020).

be crafted narrowly to protect the public and deter future conduct or broadly to punish in ways that echo for years and cripple an entity.

TMC respectfully suggests that the Court need not decide between conditions that effectively drive it out of business or permit it to continue lawful activities in consultation with industry regulators and the United States Probation Office. From the time it began negotiating a plea settlement with the United States, TMC has been transparent with the Government about its intention to undertake an arm's-length asset sale that will permanently cease TMC's operations. With the overarching goal of preserving the jobs of its valued (soon-to-be former) employees by selling its entire operation to a buyer who will fold the employees into a new Kentucky pharmacy venture, TMC expects to consummate an asset sale to an outside investor group within the next several weeks.

Substantially all of TMC's assets – equipment, contracts, book of business, intellectual property, etc. – will be sold to a group (herein "the buyer") that (1) has been vetted by the Kentucky Board of Pharmacy and (2) has zero ownership overlap with TMC's original owners. As a complimentary gesture of good faith, months before the sale was to be consummated, former company CEO Jeremy Delk voluntarily separated from TMC's day-to-day operations upon entry of his guilty plea in October 2020. He has since removed himself as a signatory on TMC's bank accounts and no longer has "view" or any other access to the company's online banking platform.

Documents formalizing the sale agreement were signed in October 2020, with the goal of finalizing the asset sale prior to the impending sentencing date; however, diligent efforts toward that end seem likely to ultimately fall a few weeks short of that goal. Because California is the most populous state within the United States (and therefore carries the largest potential customer base), the buyer insisted during contract negotiations that the sale may not be consummated until

the buyer's newly formed pharmacy entity receives a non-resident pharmacy license from California that will allow it to ship medications into California. As TMC understands it, California pharmacy regulators are in the final stages of licensure vetting and have instructed the parties to check back every seven days for an update on the final licensure issuance decision. The sale will be consummated within a few days of the issuance of the California license.

The net effect of the above is that Tailor Made Compounding, LLC will soon exist solely on paper, so to speak, largely for the purposes of facilitating the instant sentencing and tending to other affairs germane to winding down. Of course, TMC long ago stopped selling the substances and engaging in the practices at the heart of the instant prosecution. As soon as the sale can be completed, TMC will have no employees and no operations of any kind. A modest sum from the sale proceeds will be held back in TMC's operating account to handle winding down costs and to pay any unexpected or incidental expenses/debts.[3] Otherwise, a post-sale TMC will have no operational assets. Since the company has no intention of rekindling operations, it has no qualms with the imposition of conditions prohibiting it from operating in violation of local, state, or federal law, requiring it to remain in good standing with licensing authorities in any state in which it operates, or any similar conditions the Court might formulate. While such conditions would certainly safeguard against theoretical future problems, they would serve largely prophylactic or symbolic purposes given TMC's impending permanent shuttering.

After the sale, TMC will have no present means by which to operate as a pharmacy and harbors no intention of doing so in the future. The company respectfully suggests that the Court impose conditions of probation akin to the ones referenced above and identified in the presentence

---

[3] The undersigned has been billing against a modest legal fee retainer during the pendency of the instant matter. Unearned portions of that retainer will be refunded to TMC at the conclusion of the legal relationship. Although the amount of that prospective refund is speculative at this time, the refund is not anticipated to materially alter TMC's overall financial profile in any significant way.

report but order the term of probation to shift to *unsupervised* as soon as proof of the above-described asset sale is provided to the United States Probation Office. This combination would allow the Court to impose responsible safeguards suited to the instant circumstances without unduly depleting the Probation Office's limited resources in the "supervision" of a company that will no longer have operations to supervise. For the same reasons, TMC respectfully suggests that no organizational compliance program, periodic audits, financial monitoring, or comparable measures are warranted in this case.

In sum, TMC asks the Court to consider the following as sufficient signs of contrition and responsibility to justify an eventual unsupervised term of probation: (1) its lack of criminal history; (2) the expedient, cooperative way the company has addressed the instant charge; (3) TMC's extraordinary efforts at paying $1,788,906.82 in forfeiture; (4) TMC's agreement to pay a fine; and (5) its voluntary cessation of business operations via asset sale. TMC humbly and respectfully submits that its multi-faceted sentencing proposal, which combines a $1,000 fine, $1,788,906.82 in forfeiture, and probation, represents the archetypal custom-crafted sentence envision by the framers of 18 U.S.C. § 3553, *i.e.*, one that is sufficient but not greater than necessary to promote the purposes of the statute while also recognizing the practical realities of the Defendant's circumstances.

Respectfully submitted,

/s/ BRANDON W. MARSHALL
NASH · MARSHALL, PLLC
129 West Short Street
Lexington, Kentucky 40507
Telephone: (859) 254-3232
Fax: (859) 225-4746
E-mail: bwmarshall@nashmarshall.com
ATTORNEY and AUTHORIZED REPRESENTATIVE
FOR TAILOR MADE COMPOUNDING, LLC

CERTIFICATE OF SERVICE

      I hereby certify that on February 12, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this matter or service was completed by first class mail to any non-CM/ECF participants. I also forwarded a courtesy copy to United States Probation Officer Troy Brown.

      /s/ BRANDON W. MARSHALL