1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                    CENTRAL DIVISION - FRANKFORT

3   UNITED STATES OF AMERICA,

4         Plaintiff,
                              Docket No. 3:20-CR-15
5   VS.                       At Lexington, Kentucky
                              Thursday, October 29, 2020
6                             1:42 p.m.
    JEREMY DELK and
7   TAILOR MADE COMPOUNDING, LLC,

8         Defendants.
                            - - -
9      TRANSCRIPT OF REARRAIGNMENT PROCEEDINGS BEFORE
        U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE
10                          - - -
    APPEARANCES:
11

12  For the United      KATE K. SMITH
    States:             Assistant United States Attorney
13                      260 West Vine Street
                        Suite 300
14                      Lexington, Kentucky  40507-1612
                        (859) 685-4855

15  For the Defendant   J. KENT WICKER
    Jeremy Delk:        Dressman, Benzinger, LaVelle, PSC
16                      321 West Main Street
                        2100 Waterfront Plaza
17                      Louisville, Kentucky  40202
                        (502) 572-2500
18
    For the Defendant   BRANDON WAYNE MARSHALL
19  Tailor Made         Nash Marshall, PLLC
    Compounding, LLC:   129 West Short Street
20                      Lexington, Kentucky  40507
                        (859) 254-3232
21
    Court Reporter:     SANDRA L. WILDER, RMR, CRR
22                      Official Court Reporter
                        313 John C. Watts Federal Building
23                      330 West Broadway, Suite 327
                        Frankfort, Kentucky  40601
24

25        Proceedings recorded by mechanical stenography,
       transcript produced by computer.

1          [Proceedings commenced at 1:42 p.m. in open
2    court]

3          THE COURT:  Thank you, sir.

4          Good morning -- or good afternoon now, ladies
5    and gentlemen.

6          Madam Clerk, would you call the pending case,
7    please.

8          COURTROOM DEPUTY:  Yes, Your Honor.

9          In the matter of the United States of America
10   versus Jeremy Delk and Tailor Made Compounding, LLC,
11   called for waiver of indictment, filing of
12   information, and arraignment.

13         THE COURT:  Thank you.

14         Counsel, would you state your appearances,
15   please.

16         MS. SMITH:  Good afternoon, Your Honor.  Kate
17   Smith on behalf of the United States.

18         THE COURT:  Ms. Smith, good afternoon to you.

19         MR. WICKER:  Good afternoon, Your Honor.
20   Kent Wicker for Mr. Delk, who is present.

21         THE COURT:  Mr. Wicker.

22         MR. MARSHALL:  Good afternoon, Your Honor.
23   Brandon Marshall on behalf of Tailor Made Compounding,
24   and I also appear as the authorized representative of
25   that company.

1          THE COURT:  Excellent.  Thank you.
2   Mr. Marshall, Mr. Wicker, good to have you in federal
3   court this afternoon.
4          This matter is called on my docket, Mr. Delk,
5   because your attorney has indicated it's your intent
6   to enter a plea this afternoon; is that correct, sir?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  All right.  We're going to
9   accomplish three different things with this
10  proceeding.
11         I'm going to ask you a series of questions to
12  make sure you're in the right frame of mind to make
13  such an important decision.  And I'm not trying to
14  embarrass you; they're the same questions that I ask
15  every criminal defendant.
16         Secondly, you have a number of rights,
17  protections that you're going to give up, and I'm
18  going to go over those.  I just want to make sure you
19  know what you give up when you plead guilty versus
20  having the benefit of a jury trial.
21         And then finally, there will be a punishment;
22  there'll be a consequence, and that's about your
23  sentence.
24         This isn't the proceeding in which we'll
25  finally determine your sentence, but I want to talk a

1  little bit about that process and how that decision

2  will be made, and talk about the maximum penalties,

3  and make sure you understand all of those

4  consequences.

5          You can see, it's really important that you

6  understand these proceedings.  So if at any time I say

7  something that's confusing to you, will you ask me to

8  explain myself?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And then you're very ably

11  represented.  Mr. Wicker's very experienced.  And if

12  at any time you need to consult with him during this

13  proceeding, you can do so, and do so confidentially.

14  Any questions?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  All right.  The first thing we

17  need to do is administer an oath.

18          Would you stand where you are, please, and

19  direct your attention to the courtroom deputy.

20          COURTROOM DEPUTY:  Please raise your right

21  hand.

22          [THE DEFENDANT JEREMY STEVEN DELK WAS SWORN]

23          THE COURT:  You can be seated.

24          You're under oath, so I expect that you'll

25  answer my questions truthfully, and I know that you'll

1  do that, Mr. Delk.

2          I do need to form you that you if choose not

3  to, you could face another federal charge of perjury,

4  or making a false statement; is that clear?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  There's a right that you have

7  that I talk about at the beginning of the proceeding.

8  It's called the right to remain silent.  You probably

9  heard that phrase before.  It simply means that you're

10 the only person in the courtroom that can provide

11 information that's going to result in a federal felony

12 conviction.  No one can require you to provide it.

13 Your lawyer can't require this.  I can't require it.

14 The government can't require it.  You have an absolute

15 right to remain silent, and then we'll let a jury

16 decide whether you're guilty or not guilty.

17          Do you understand that you are waiving that

18 right if we go forward?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  Give me your full name.

21 Let's make sure we have it correct for the record.

22          THE DEFENDANT:  It's Jeremy Steven,

23 S-T-E-V-E-N, Delk.

24          THE COURT:  And how old are you, Mr. Delk?

25          THE DEFENDANT:  I'm 40 years old.

1          THE COURT:  And how far did you go in school?

2          THE DEFENDANT:  Bachelor's in science.

3          THE COURT:  All right.  I'm interested in

4    your work history.  And I don't need to know every

5    job.  I obviously know the last role that you had.

6    But roughly from the time you left school, to the most

7    recent work experience, give me a sense of your work

8    history.

9          THE DEFENDANT:  After college, I went into

10   finance.  I was an institutional equity trader at

11   Fidelity Investments.

12         I left that job in my early 20s and started a

13   company called Delk Enterprises, which is -- still

14   exists today.  It's primarily -- it was started as a

15   real estate development, and then went into private

16   equity venture capital investing from building

17   materials, manufacturing.  And then moved to

18   healthcare and investing in 2007 and 2008, and more

19   full-time in healthcare investments in 2010, until

20   presently.

21         THE COURT:  Okay.  Are you currently under

22   the care of a physician for any kind of physical

23   condition, high blood pressure or cholesterol,

24   anything like that?

25         THE DEFENDANT:  No, Your Honor.

```
 1            THE COURT:  Are you currently under the care

 2   of a mental health provider, a psychiatrist,

 3   psychologist, social worker?

 4            THE DEFENDANT:  I have a therapist I see once

 5   every few months.

 6            THE COURT:  Let me ask this:  Have you ever

 7   been hospitalized or treated for a mental condition?

 8            THE DEFENDANT:  No, Your Honor.

 9            THE COURT:  Okay.  And have you been

10   diagnosed with any kind of mental condition?

11            THE DEFENDANT:  No, sir.

12            THE COURT:  All right.  Have you ever been

13   treated or hospitalized for an addiction to drugs or

14   alcohol?

15            THE DEFENDANT:  No, Your Honor.

16            THE COURT:  Have you used any alcohol in the

17   last 24 hours?

18            THE DEFENDANT:  I had a glass of wine with

19   dinner last night.

20            THE COURT:  Okay.  Have you used any drugs,

21   legal or otherwise, in the last 24 hours?

22            THE DEFENDANT:  No, Your Honor.

23            THE COURT:  Mr. Wicker, have you had any

24   problems communicating with your client?

25            MR. WICKER:  Not at all, Your Honor.
```

1          THE COURT:  Ms. Smith, is the government in
2    possession of any information that would suggest that
3    Mr. Delk is not competent to enter a plea this
4    afternoon?
5          MS. SMITH:  No, Your Honor.
6          THE COURT:  Okay.  Well, based on your
7    answers to my questions, confirmed by the lawyers,
8    you, of course, are competent to enter a plea of
9    guilty this afternoon.
10          I want to make sure you got a copy of the
11    information; I'm sure you did, that sets out the
12    charge against you.  And I want to make sure that
13    you've had an opportunity to review that document and
14    talk to your lawyer about that document.  Has that
15    occurred?
16          THE DEFENDANT:  Yes, Your Honor.
17          THE COURT:  Okay.  And have you been
18    satisfied with the advice and counsel and the
19    representation you've received from the lawyers
20    involved in this case?
21          THE DEFENDANT:  Yes, Your Honor.
22          THE COURT:  Now, it's important for you to
23    understand that you have a constitutional right to
24    have your case, present it to a grand jury, who will
25    determine if there's probable cause to return an

indictment against you.  It's one of the protections that you have.

Now, under the Rules of Criminal Procedure, you can give up that right, and you've done that in this particular case.  You've worked out an agreement with the United States in which the charge against you is being brought by way of an information.

I just want to make sure we put on the record your understanding that the only way that the government can proceed by way of an information is if you agree to it.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And have you talked to your lawyer about the consequence, if any, of waiving your right to proceed by way of indictment?

THE DEFENDANT:  Yes, sir, I have.

THE COURT:  Okay.  Do you have a written waiver in front of you?

MR. WICKER:  We do, Judge.

THE DEFENDANT:  Yes.

THE COURT:  And if that has not yet been signed, I'd like for you to go ahead and sign in open court, and then we'll have that document tendered to me, please.

I've been presented with a waiver of

1  indictment that's been signed by Mr. Delk in my

2  presence, and it's also been co-signed by his attorney

3  Mr. Wicker in my presence.  It appears to be in order.

4        I'm going to sign and date it with today's

5  date, which is the 29th, and we'll direct that it be

6  filed in the record, along with the information, if we

7  have the original information as well.

8        Yes, thank you.  Let's have that tendered as

9  well, please.

10        All right.  We'll direct that that be filed

11  in the record as well.

12        Now, my understanding is that you've worked

13  out a plea agreement with the United States; is that

14  correct?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Okay.  Do you have the original

17  document?  Do you have the original plea agreement?

18        MS. SMITH:  Defense counsel does, Your Honor.

19        THE COURT:  Okay.  Let me have that document

20  tendered to me as well, and then I have some questions

21  I'm going to ask you about it.

22        Thank you.  I've been tendered two documents,

23  one's seven pages, inclusive of the signature page,

24  and the other is our supplement.  We have that

25  prepared with every plea agreement in the Eastern

1  District of Kentucky.

2         And, Mr. Wicker, it looks like on September

3  16, you signed both of these documents.  Is that your

4  original signature, sir?

5         MR. WICKER:  It was signed on my behalf, I

6  believe, Your Honor.

7         THE COURT:  Yes, it does -- with your -- with

8  your permission, yes.

9         MR. WICKER:  Yes, sir.

10         THE COURT:  And then, Mr. Delk, it looked

11  like back on September 9th, that you signed these

12  documents.  I think I'm looking actually at a

13  photocopy of the signatures, but was that your

14  original signature on those documents?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And then the documents I have

17  have not been signed by the United States.

18         MR. MARSHALL:  Judge, I apologize.  I believe

19  that the wrong one got handed your way.

20         THE COURT:  All right.  We'll swap that out

21  then.

22         MS. SMITH:  Your Honor, they were all signed

23  in different places, so there is not, for Mr. Delk's

24  plea agreement, one with live signatures on it.  It's

25  all scanned versions.

1            THE COURT:  All right.  Tryin' to fool me

2    here.

3            Again, this is a seven-page document with

4    Mr. Wicker's original authorized signature on -- dated

5    September 16th.

6            And then Mr. Delk has identified his

7    signature dated on September 9th on both documents.

8            And then, Ms. Smith, it appears that your

9    original signature with the date of September 16th is

10   on both of these documents.  Is that your original

11   signature?

12           MS. SMITH:  Yes, Your Honor.

13           THE COURT:  Mr. Delk, did you get a chance to

14   read these documents before you signed them?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  And did you understand each of

17   the paragraphs?

18           THE DEFENDANT:  I did.

19           THE COURT:  Okay.  Has anybody made a promise

20   to you that's not included in these documents?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  Has anybody said, if you'll sign

23   them, I'm going to guarantee that you'll get a

24   particular sentence?

25           THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Has anybody forced you or coerced

2  you to sign them?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  You signed them under your own

5  free will and volition because you're guilty of the

6  charge you're going to plead guilty to?

7          THE DEFENDANT:  I did, yes, sir.

8          THE COURT:  Okay.  Well, it's important that

9  we're all on the same page as to what's been agreed

10 to, and that the record reflect that that's the case.

11          So I'm going to ask Ms. Smith if she'll

12 summarize each of these paragraphs on the record.

13 She's not going to read them verbatim; she'll just

14 summarize them.

15          I'd like for you to listen carefully, please,

16 because when she's done, I'm going to ask you whether

17 her summary is consistent with your understanding as

18 to what you've agreed to.

19          If you hear something that's confusing or

20 something that doesn't quite seem right, that's fine,

21 we'll stop and then we'll work it out and go forward.

22          Are you with me?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Ms. Smith.

25          MS. SMITH:  Thank you, Your Honor.

1       In paragraph 1, the defendant agrees to plead
2  guilty to Count 1 of the information, charging a
3  violation of unlawful wholesale distribution of
4  prescription drugs in violation of 21 U.S.C., Section,
5  331(t).
6       Paragraph 2 sets forth the essential elements
7  of that offense.
8       In paragraph 3 the parties agree to facts
9  which establish the essential elements that the United
10 States can prove beyond a reasonable doubt, and that
11 the defendant Mr. Delk admits.
12      Paragraph 4 sets forth the statutory
13 punishment to the charge, and notes the application of
14 a mandatory special assessment.
15      Paragraph 5, the parties jointly recommend
16 certain sentencing guideline calculations, which, of
17 course, do not bind the Court.
18      In paragraph 6, the parties note that they
19 have no agreement as to the defendant's Criminal
20 History Category.
21      In paragraph 7, Mr. Delk agrees not to file a
22 motion for a decrease in the offense level based on
23 3B1.2, or file a departure motion under Chapter 5,
24 parts (h) or (k) of the sentencing guidelines.
25      Mr. Delk also agrees not to seek a sentence

1  below the advisory sentencing guideline range as set

2  forth in paragraph 5.

3       In paragraph 8, Mr. Delk waives his right to

4  appeal the guilty plea and conviction.  He reserves

5  his right to appeal any determination made by the

6  Court at sentencing.

7       He waives the right to make a determination

8  the Court makes at sentencing, with the exception of

9  any aspect of the sentence if the length of term of

10 imprisonment exceeds the sentencing guideline

11 calculations the parties recommend in paragraph 5.

12 That didn't make very much sense, but there's a

13 limited -- there's a limited waiver on the sentence.

14      In paragraph 9, the United States agrees to

15 recommend releasing the defendant on a personal

16 recognizance bond for future court appearances,

17 provided he doesn't violate the terms of order setting

18 his conditions of release.

19      In paragraphs 10 and 11, Mr. Delk agrees to

20 certain financial disclosures and monetary penalties

21 provisions.

22      In paragraph 12, the United States agrees not

23 to bring additional charges against Mr. Delk based on

24 the evidence known at the time of execution of this

25 agreement and arising out of his conduct in the

1  Eastern District of Kentucky unless he breaches this

2  agreement.

3          And paragraphs 13, 14 and 15 contain standard

4  terms in Eastern District of Kentucky plea agreements.

5          THE COURT:  Mr. Wicker, I'll begin with you,

6  sir.  Is that summary consistent with your

7  understanding as to what your client has agreed to?

8          MR. WICKER:  Yes, it was, Your Honor.

9          THE COURT:  Most importantly, Mr. Delk, is

10 that consistent with your understanding as to what you

11 agreed to?

12         THE DEFENDANT:  Yes, Your Honor, it is.

13         THE COURT:  Do you understand this is like a

14 contract, and it binds you and it binds the United

15 States, but it does not bind me as the judge; is that

16 clear?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  That's particularly important as

19 it relates to sentencing.  Plea agreements always

20 include a lot of information about sentencing, but I'm

21 not bound by it, but you are, and so is the United

22 States.  Any questions about that?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Let me focus your attention next

25 on what you give up or lose by pleading guilty in the

1 resulting felony conviction.

2       First of all, you lose your civil rights;
3 you're going to lose your right to vote and your right
4 to hold public office, the right to serve as a juror
5 going forward, and the right to possess a firearm ever
6 again, unless those were to be restored at some point.
7 Do you understand that?

8       THE DEFENDANT:  I do, Your Honor.

9       THE COURT:  You also have the rights
10 connected to a speedy trial, and that's the first one.
11 You do not have to wait a long time before we would
12 schedule a trial and decide this matter by way of a
13 jury trial, if you were to choose.

14       And if you're worried that you don't have the
15 funds to go forward fully with the trial and hire a
16 lawyer, if that proved to be the case, the government
17 would provide a lawyer for you.

18       If you're worried that the witnesses that you
19 might need may not want to become involved, in most
20 circumstances, we can require, or compel witnesses to
21 come into court and participate in the administration
22 of justice.

23       Those witnesses, by the way, have to appear
24 live.  They have to come in, look you in the eye when
25 they testify.  Your lawyer gets to ask those witnesses

1  tough questions as a way of getting at the truth,
2  confront those witnesses.
3          And as I mentioned to you at the beginning of
4  the proceeding, you would never have to be called as a
5  witness.  You'd have the absolute right to remain
6  silent.  You could testify if you chose.  But if you
7  chose not to, I would inform the jury that they could
8  not use that fact against you in any way.
9          But here's the most important protection you
10 have, and that is you're presumed innocent.  No
11 defendant has to come into court and prove their
12 innocence.  It's the government's burden, Ms. Smith's
13 burden from the beginning of the trial to the end to
14 prove you guilty beyond a reasonable doubt.  There's
15 only one way the government can do that, and that's to
16 convince 12 jurors unanimously that they've met that
17 burden.  Eleven to one doesn't work.  It has to be
18 unanimous.
19         We make it difficult for the government to
20 the use its police power in a way that could
21 ultimately take somebody's liberty away from them, so
22 we put a lot of protections in place for criminal
23 defendants.
24         The important point of all of this is that
25 obviously, if you go forward in a few minutes, you'll

1  be convicted by way of a plea, so there's no trial.

2  So you're not going to benefit from any of those

3  protections.  Do you understand that?

4          THE DEFENDANT:  I do, Your Honor, yes, sir.

5          THE COURT:  Okay.  Any questions about that?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  I next want to focus on the

8  consequence.  And this isn't the proceeding in which

9  we're going to determine your sentence.

10          You've spent a lot of time talking to your

11  counsel about that, you've included some information

12  in the plea agreement related to that as well, so I

13  don't want to belabor this, but I do want to make sure

14  you understand what the maximum penalties are that you

15  could face, and I want to talk to you a little bit

16  about the process that we're going to use to make a

17  decision about your sentence.

18          You're pleading guilty to one count; it's

19  unlawful wholesale distribution of prescription drugs.

20  That violates 21 United States Code, Section 331(t),

21  and you have a maximum term of incarceration for

22  pleading guilty to that charge of ten years.

23          If there were to be a period of incarceration

24  imposed in this case, it will be followed by a period

25  of supervised release.  So you'd be released into the

community, it would no more than three years, and
you'd be -- have your liberty restored to you, but
you'd have some rules you have to follow.  Obviously,
you can't get in trouble with the law again, and some
other conditions that you'd have to follow.  As long
as you followed those conditions, then there would be
no problem.

But the worst case scenario would be that
you'd have a problem, you'd violate the conditions,
and the consequence could be revocation in your
supervision.  You could spend up to another two years
incarcerated, with another three years of supervised
release after that.

Now, I don't expect that will happen.  You
don't want that to happen.  I certainly don't want it
to happen for you, but I want to make sure that you
understand the maximum penalty.

I think there's an agreed-to fine in this
case; is that correct?

MS. SMITH:  The parties agree that a fine is
appropriate, but as to the amount, that would be
governed by the guidelines.

THE COURT:  Okay.  So for the maximum penalty
statutorily in this case would be $250,000 in terms of
the maximum statutory fine in this particular case.

1   And the guidelines may recommend an amount that's

2   less -- less than that, but that would be the

3   statutory maximum for pleading guilty to that count in

4   this case.

5           And then I don't believe there's an agreement

6   on restitution or that we're not going to -- there's

7   no entity perhaps left to restitute to?

8           MS. SMITH:  That is correct, Your Honor.  I

9   don't think restitution would be applied here.

10          THE COURT:  So typically that will be part of

11  the sentence.

12          The final thing I would say to you is that

13  there is a special assessment of $100 per count, which

14  is non-waivable, and would be part of the sentence in

15  this case.

16          Do you understand those are the maximum

17  penalties that you could face?

18          THE DEFENDANT:  I do, Your Honor, yes, sir.

19          THE COURT:  Do you have any questions?

20          THE DEFENDANT:  I do not.

21          THE COURT:  Okay.  Well, let me focus your

22  attention on just a couple of matters related to

23  sentencing.

24          You know what's going to happen next.  You've

25  going to sit down with the probation office and

1  they're going to gather lots of information and then

2  they're going to prepare a report; it's called a

3  presentence investigation report.  And it has a lot of

4  background information, and -- but one of the --

5  probably the most important document that a judge uses

6  and reads and studies in making a determination about

7  your sentence.

8          Probably most significantly, it's going to

9  have a recommended sentence.  As Mr. Wicker, I'm sure

10 has explained to you, this is not just pulled out of

11 the air.  We're going to look at the crime you

12 committed, the amount of money involved, we're going

13 to look to see if there's any criminal history that

14 we're concerned about, and then that'll result in a

15 recommended period of incarceration perhaps, a

16 recommended fine.  It comes as a range.

17         Before I make a decision about your sentence,

18 you're going to get a copy of that report.  The

19 government gets a copy.  I'll get a copy.  In working

20 with your lawyers, you can decide whether or not

21 there's anything in the report that you think's

22 incorrect.  Maybe it's a date, maybe it's a name, a

23 description.  Or maybe you think the recommended

24 sentence is incorrectly calculated, that it's too

25 harsh, for example.

1          That's fine.  If that happens, your lawyer
2 will file objections.  We'll have a hearing, and I'll
3 rule on those objections.  I might agree; I might
4 disagree.  The important thing today is we can't know
5 how that will turn out.
6          So it's very common for you to have worked
7 with your lawyers to try to anticipate what the
8 sentence will be.  But if we get to sentencing and the
9 recommended sentence turns out to be higher than you
10 think it is, you'll be disappointed, but the law
11 doesn't allow me to let you change your mind.  So you
12 cannot come to me at that point and say, Judge, I now
13 want to have a trial.  This is higher than I thought
14 it would be.  Is that clear?
15          THE DEFENDANT:  Yes, Your Honor.
16          THE COURT:  That recommended sentence is also
17 exactly as I've described it during this proceeding;
18 it's a recommendation.
19          And so I could decide to sentence you below
20 what's being recommended, but I could decide to
21 sentence you above what's being recommended, as long
22 as it didn't go over the statutory maximums.
23          And if it was higher than what's being
24 recommended, again, you would be disappointed, but
25 that is not a reason under the law that I could allow

1 you to change your mind, and then have a jury trial.
2 Do you understand that?
3          THE DEFENDANT:  I do, Your Honor.
4          THE COURT:  Do you understand there's no
5 parole in the federal system?
6          THE DEFENDANT:  I do, Your Honor.
7          THE COURT:  All right.  Just to be clear,
8 what that means is that whatever sentence I were to
9 impose, if there's an incarcerated sentence in this
10 case, that you'll have to serve the majority of that
11 sentence.  State courts have parole.  Sometimes you'd
12 serve a little bit and not have to serve the rest.
13 We've abolished that many years ago in the federal
14 system.
15          Any question about sentencing?
16          THE DEFENDANT:  No, Your Honor.
17          THE COURT:  Okay.  Well, let me draw your
18 attention to one part of your plea agreement.  And as
19 Ms. Smith pointed out, it's a little confusing, so I
20 want to make sure that we have all of our questions
21 answered.
22          It's paragraph 8.  So one of the protections
23 you have, Mr. Delk, is that certain decisions that get
24 made by me in this court that you disagree with, you
25 can ask another group of three judges to take a second

1  look at it.  And you can see how that protects you,

2  and that's, of course, called an appeal.

3          As part of your agreement, as part of the

4  contract, you've given up, though, some of your appeal

5  rights, in essence, promised under certain

6  circumstances I'm not going to appeal, and you've

7  retained other appeal rights.  I just want to make

8  sure you had a chance to talk to Mr. Wicker about

9  paragraph 8.

10          THE DEFENDANT:  I did.

11          THE COURT:  And did he explain to you the

12  consequence of waiving the appeal rights as described

13  in paragraph 8?

14          THE DEFENDANT:  Yes, Your Honor, he did.

15          THE COURT:  Mr. Wicker, do you think your

16  client understands the consequence of waiving those

17  appeal rights?

18          MR. WICKER:  He does, Your Honor.

19          THE COURT:  Well, based on your responses to

20  my questions, Mr. Delk, confirmed by your attorney, I

21  do find that the waiver of appeal as set out in

22  paragraph 8 is knowing, and it's voluntary, and I do

23  think you understand the consequence in waiving those

24  appeal rights.

25          One final piece of business that I need to

1  conduct before I accept your plea.  And that is, I

2  need to be confident that you understand the conduct

3  that you engaged in that's criminal conduct, and you

4  admit to it.

5       If you've come in here today, you don't feel

6  like you've done anything wrong, but you're just

7  trying to plead guilty to get it over with, I can't

8  let you go forward.

9       So I want to first of all, have Ms. Smith put

10 on the record the elements of this count that you're

11 pleading guilty to, and then I'll have some follow-up

12 questions about that.  And then I'll have a question

13 about the plea agreement.

14       But before we're done, I'll want to just hear

15 in your own words what it is you did, okay?

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  Ms. Smith.

18       MS. SMITH:  Thank you, Your Honor.

19       As agreed to between the parties, the

20 elements of 21 U.S.C., Section 331(t) are one, the

21 defendant engaged in wholesale distribution of a

22 prescription drug.

23       Two, that distribution was in interstate

24 commerce.

25       Three, the defendant was not licensed by the

1   state from which the drug was distributed.

2            And four, the defendant did so knowingly.

3            THE COURT:  Mr. Delk, assume with me that we

4   went to trial.  The government put on their proof,

5   they called their witnesses, they put into evidence

6   documents.  Do you think they could have proven each

7   of those elements beyond a reasonable doubt?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  If you'll look at the copy of

10  your plea agreement that you have in front of you, I

11  want to draw your attention to paragraph 3, which

12  begins on the first page, and then goes over to page

13  3.  It's all of page 2, page 3, it's single-spaced

14  paragraphs (a) through (d).  Those are the facts that

15  this plea agreement is based on.

16           When you signed the plea agreement, did you

17  do so because to the best of your knowledge, those

18  facts are true?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Put all the legal language aside.

21  What did you do?

22           THE DEFENDANT:  So I was, at the time, the

23  CEO of Tailor Made Compounding, which is a compounding

24  pharmacy that makes medications on a patient's script.

25  We are what's -- we were called what's a 503A, which

 1  means it can dispense medications on a patient's

 2  specific script -- prescription form a doctor, so from

 3  Dr. X to Mr. Wicker, it has to be an individual.  And

 4  in not receiving that patient-specific script, if you

 5  were to dispense and send out medications in bulk, you

 6  know, 10 vials or 20 vials, you would be required to

 7  have a wholesale distribution license in this state,

 8  as well as the state it was shipped to.

 9          I'm here to take responsibility for that.  I

10  didn't have that -- those licenses, didn't obtain

11  those licenses, and did so knowingly.

12          THE COURT:  All right.  Ms. Smith, do you

13  think there's a satisfactory factual basis to accept a

14  plea from the defendant?

15          MS. SMITH:  Yes, Your Honor.

16          THE COURT:  Mr. Wicker, do you agree?

17          MR. WICKER:  I do, Judge.

18          THE COURT:  Mr. Delk, would you stand,

19  please.

20          How do you plead as to Count 1 as set forth

21  in the information; do you plead guilty or not guilty?

22          THE DEFENDANT:  I plead guilty, Your Honor.

23          THE COURT:  You can be seated.

24          Mr. Marshall, would you stand, please.

25  You're here as the corporate representative?

1          MR. MARSHALL:  I am, Your Honor.

2          THE COURT:  You're the attorney for the

3    corporation.  Under the rules --

4          MR. MARSHALL:  I am, sir.

5          THE COURT:  -- the attorney can enter a plea

6    on behalf of the corporation which is pleading guilty,

7    as I understand it, to a misdemeanor charge.

8          How does the corporation plead as to Count 2

9    that was set forth in the information; does the

10   corporation plead guilty or not guilty?

11         MR. MARSHALL:  Judge, the corporation pleads

12   guilty, consistent with the corporate resolutions and

13   other matters that if I could, I would tender to the

14   Court.

15         THE COURT:  If you would, please, let me take

16   a look at these, and then we can have those filed in

17   the record.

18         MR. MARSHALL:  Thank you, Your Honor.

19         THE COURT:  Mr. Marshall, it looks like

20   earlier today you signed this plea agreement that was

21   worked out with the United States?

22         MR. MARSHALL:  Yes, sir.

23         THE COURT:  Is that your original signature?

24         MR. MARSHALL:  It is, Your Honor.

25         THE COURT:  And then it appears --

1        MR. MARSHALL:  It's Mr. Delk's signature on

2   the corporate resolution.

3        THE COURT:  That is Mr. Delk's signature --

4        MR. MARSHALL:  Yes.

5        THE COURT:  -- on the corporate resolution.

6   But what about -- and that -- that's your signature on

7   behalf of Tailor Made Compounding as well?

8        MR. MARSHALL:  It is, Your Honor.

9        THE COURT:  Okay.  And then, Ms. Smith,

10  you've signed both of these documents.  Is that your

11  original signature --

12       MS. SMITH:  Yes, sir.

13       THE COURT:  -- with today's date, correct?

14       MS. SMITH:  Yes, Your Honor.

15       THE COURT:  Okay.  Okay.  You can be seated.

16       I think these documents are in order.

17       Consequently, I'm satisfied with the

18  responses that have been given to me by the defendant.

19  And I'm satisfied with the documents and the plea that

20  has been entered on behalf of the corporation in this

21  case.

22       Accordingly, it's the finding of this Court

23  that in the case of United States of America versus

24  Jeremy Delk and Tailor Made Compounding, LLC, as I

25  say, I think the defendant Mr. Delk is competent and

1   capable of entering an informed plea.  I think the

2   plea of guilty is knowing and voluntary.  It's

3   supported by an independent basis in fact that

4   contains the essential elements of the crime charged.

5         I'm going to accept the plea by Mr. Delk, and

6   I'm going to accept the plea on behalf of the

7   corporation and adjudge both defendants guilty of the

8   offenses charged against each of them, Count 1 of the

9   information with regard to Mr. Delk, and Count 2 of

10  the information with regard to the corporate

11  defendant.

12        We'll have these plea agreements, of course,

13  filed in the record.

14        I would like to set this matter for

15  sentencing, and hereby set it for Wednesday, February

16  24, 2021, next year.  We'll do it at 11:00.

17        Our hope is to be able to do that in

18  Frankfort, as opposed to Lexington, so we'll hold that

19  proceeding there.

20        We'll direct the probation office, of course,

21  to prepare presentence investigation reports in this

22  case.

23        Encourage you, Mr. Delk, to cooperate; I know

24  you'll do that.  Make sure your lawyers are a part of

25  that process.  It's really important to make sure that

1  I have the best information to make a fair decision

2  about your sentence.

3          Have you understood these proceedings?

4          THE DEFENDANT:  I have, yes, sir.  Thank you,

5  Your Honor.

6          THE COURT:  Do you have any questions at

7  all --

8          THE DEFENDANT:  I do not.

9          THE COURT:  -- about what's occurred here

10 today?

11         THE DEFENDANT:  I do not.  Thank you, Your

12 Honor.

13         THE COURT:  Okay.  Now, I understand there's

14 been some preliminary discussions with the probation

15 office in terms of conditions of release.  The

16 government's agreed not to oppose release until

17 sentencing in this case.

18         The only question seems to be related to

19 travel.  So let me hear from you, Mr. Wicker.

20         MR. WICKER:  Yes.  Thank you, Judge.

21         As you know from seeing the bond report,

22 Mr. Delk has no prior criminal record.  He has

23 substantial ties to Kentucky.  He was born -- born and

24 raised here.  He owns a home in Nicholasville.  He has

25 children who are here in Kentucky.  And under the plea

1  agreement, the offense level is lower than many that

2  you've seen on a routine basis.

3        Mr. Delk, though, has a need to travel at

4  times on business.  And between now and the sentencing

5  date, he has three business trips that he would need

6  to take, and he also has a trip that he'd like to take

7  with his -- with his children to on a short vacation.

8        I think under the circumstances that it would

9  be appropriate for the Court to require Mr. Delk to

10  consult and give notice to probation when he's going

11  to take a trip and tell them where he's going to be,

12  what he's going to be doing, but not to require

13  advance permission of probation or the Court if he's

14  traveling within the United States.

15        THE COURT:  So to be clear, he's willing to

16  give up his passport?

17        MR. WICKER:  We have one -- one additional

18  trip that we'd like to ask permission to take to the

19  British Virgin Islands.  But other than that trip,

20  yes, he would be willing, of course, to give up his

21  passport and --

22        THE COURT:  And that's the vacation -- that's

23  the family vacation?

24        MR. WICKER:  That would be -- Mr. Delk has

25  property in the BVIs.  But because of the COVID

1  pandemic, he's not been able to check on his property

2  in a year or more, so he'd like to take a short trip

3  to check on his property then.

4          And then in February, he has a trip, short

5  trip to Disney that he's planning.

6          THE COURT:  But that's within the continental

7  United States.

8          MR. WICKER:  That's within -- for the

9  family -- within the United States.

10          THE COURT:  Okay.  Ms. Smith, what do you

11  think?

12          MS. SMITH:  Your Honor, I'd defer to

13  probation and the Court.  I don't have a strong

14  objection to any of the proposed procedures for this

15  or the proposed travel.

16          THE COURT:  Well, why don't we do this.  I've

17  got conditions, which I think you reviewed.  I do not

18  have the passport condition.  And if the government --

19  I mean, this does seem to me to be a case in which I

20  don't think we have -- we've got strong ties to the

21  community.  We don't have a concern about you fleeing

22  the jurisdiction.  And so I don't know that there's a

23  necessity to surrender your passport.  If we had you

24  to do that, it would just complicate the matters as it

25  relates to the trip to the BVIs, so I'm not going to

1  impose that.

2      But we typically would confine you to the

3  Eastern District of Kentucky.  I do think we could

4  give the probation office flexibility, though, to

5  allow for business trips, and the trip you've

6  identified to Orlando.

7      And why don't I -- why don't we maybe ask the

8  probation officer to give -- recommend the best

9  language to kind of accomplish that to make sure

10 you've got good guidance, and let's go ahead and kind

11 of work that out before we ...

12      PROBATION OFFICER CARDIN:  Yes, sir.

13 Regarding the -- regarding the passport, surrendering

14 the passport, my understanding is that that condition

15 is not going to be imposed, correct?

16      THE COURT:  Correct, that's correct.

17      PROBATION OFFICER CARDIN:  Yes, sir.  And

18 then that second part of the language, perhaps after

19 the part where it says, "confined to the Eastern

20 District of Kentucky," perhaps maybe something along

21 the lines of, "or within the United States as directed

22 by the U.S. Probation," perhaps, sir, if that sounds

23 appropriate.  Or perhaps, "As directed by the U.S.

24 Probation."  That might be shorter, sir.

25      THE COURT:  Okay.  What if we provide a

1 little bit of guideline on this and just simply say

2 that the travel is restricted to the confines of the

3 Eastern District of Kentucky, or as directed by the

4 United States Probation Office regarding business

5 travel and one trip related to a family vacation?

6          Mr. Wicker?

7          MR. WICKER:  Judge, I think that's generally

8 workable.  I know that there is a pending sale of his

9 company that he's going to be working on, and some of

10 the counsel -- or some of the people involved in the

11 deal are at Louisville, so could we expand that to

12 both districts in Kentucky?

13          THE COURT:  I don't think there'd be a

14 problem with that.

15          Ms. Smith, do you have any problem?

16          MS. SMITH:  No, Your Honor, no objection.

17          THE COURT:  And then with regard to the more

18 specific language, any objection to that?

19          MS. SMITH:  No, Your Honor.

20          THE COURT:  Okay.  I'm just going to make

21 these handwritten changes, and then we'll finalize

22 this.

23          Okay.  I'm going to order that the defendant

24 be released on conditions.  I've signed and dated that

25 order with today's date.  I have made one handwritten

1 change and initialed that change consistent with my

2 ruling here on the bench with regard to travel.

3 So there may be a little processing that we

4 need to do before we allow you to leave today, but

5 otherwise, you'll be released on these conditions.

6 Ms. Smith, is there anything else that I need

7 to address on behalf of the United States?

8 MS. SMITH:  No, Your Honor.

9 THE COURT:  Mr. Wicker, anything else on

10 behalf of your client?

11 MR. WICKER:  No, Your Honor.  Thank you.

12 THE COURT:  Mr. Marshall, anything I can do

13 on behalf of the corporate client here?

14 MR. MARSHALL:  Judge, just briefly.

15 I wanted to put on the record the agreement

16 with the company and the United States calls for a

17 significant forfeiture payment.  And I wanted the

18 Court to be aware that today prior to the hearing I

19 tendered a check for $800,000 representing the first

20 of two tranches.  We represent to the Court that we

21 anticipate making the final payment on the forfeiture

22 prior to sentencing.

23 THE COURT:  Okay.  Excellent.  Thank you for

24 making that part of the record today.

25 The next time I see you, sir, will be after

1  the new year, and we'll conduct the sentencing in this

2  case.  But as I say, you'll be released under the

3  current conditions.

4           Thank you, counsel, for your representation.

5           We'll stand adjourned for the day.

6           THE DEFENDANT:  Thank you, Your Honor.

7           [END OF PROCEEDINGS – 2:27 p.m.]

8                       *  *  *  *  *

9           I, SANDRA L. WILDER, RMR, CRR, certify that

10  the foregoing is a correct transcript from the record

11  of proceedings in the above-entitled matter.

12

13  /s/ Sandra L. Wilder RMR, CRR      Date of Certification:
    Official Court Reporter            April 8, 2021

14

15

16

17

18

19

20

21

22

23

24

25