```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
 2              CENTRAL DIVISION - FRANKFORT

 3    UNITED STATES OF AMERICA,

 4          Plaintiff,
                              Docket No. 3:20-CR-15
 5    VS.                     At Lexington, Kentucky
                              Wednesday, February 24, 2021
 6                            11:08 a.m.
      JEREMY DELK and
 7    TAILOR MADE COMPOUNDING, LLC,

 8          Defendants.
                              - - -
 9        TRANSCRIPT OF SENTENCING PROCEEDINGS BEFORE
          U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE
10                            - - -
      APPEARANCES:
11
      For the United    KATE K. SMITH
12    States:           Assistant United States Attorney
                         260 West Vine Street
13                       Suite 300
                         Lexington, Kentucky  40507-1612
14                      (859) 685-4855

15    For the Defendant  WILLIAM H. BRAMMELL, JR.
      Jeremy Delk:       Dressman, Benzinger, LaVelle, PSC
16                       321 West Main Street
                         2100 Waterfront Plaza
17                       Louisville, Kentucky  40202
                        (502) 572-2500
18
      For the Defendant  BRANDON WAYNE MARSHALL
19    Tailor Made        Nash Marshall, PLLC
      Compounding, LLC:  129 West Short Street
20                       Lexington, Kentucky  40507
                        (859) 254-3232
21
      Court Reporter:    SANDRA L. WILDER, RMR, CRR
22                       Official Court Reporter
                         313 John C. Watts Federal Building
23                       330 West Broadway, Suite 327
                         Frankfort, Kentucky  40601
24
          Proceedings recorded by mechanical stenography,
25      transcript produced by computer.
```

```
 1              [Proceedings commenced at 11:08 a.m. in open
 2   court]
 3              THE COURT:  Thank you, sir.
 4              Good morning, ladies and gentlemen.
 5              Madam Clerk, would you call the pending case,
 6   please.
 7              COURTROOM DEPUTY:  Yes, Your Honor.
 8              Frankfort Criminal Action 20-CR-15, United
 9   States of America versus Jeremy Delk and Tailor Made
10   Compounding, this matter being called for sentencing,
11   Your Honor.
12              THE COURT:  Thank you.
13              Counsel, state your appearances, please.
14              MS. SMITH:  Good morning, Your Honor.  Kate
15   Smith on behalf of the United States.
16              THE COURT:  Ms. Smith, nice to see you.
17              MR. BRAMMELL:  Good afternoon, Your Honor --
18   Bill -- or, morning -- Bill Brammell, on behalf of the
19   defendant Jeremy Delk, who's present with me.
20              THE COURT:  Mr. Brammell, nice to see you,
21   sir.
22              Mr. Delk.
23              MR. MARSHALL:  Good morning, Your Honor.
24   Brandon Marshall, standing here as counsel and
25   authorized representative for Tailor Made Compounding.
```

1          THE COURT:  Thank you, Mr. Marshall.  Glad to
2     have you in federal court this morning as well.
3          This matter is on my docket to impose a
4     sentence on the two defendants in this particular
5     case.
6          And, Mr. Delk, you'll recall that when you
7     decided to plead guilty, we directed the United States
8     Probation Office to prepare a presentence
9     investigation report.  I just want to make sure you
10    got a copy of that document, and you had an
11    opportunity to read it, to sit down with your lawyers,
12    and get all your questions answered.  Did that occur,
13    sir?
14          THE DEFENDANT:  It did, Your Honor, yes.
15          THE COURT:  Okay.  And then I'm sure that
16    you've received a copy of that on behalf of the
17    corporation, Mr. Marshall.  Just let's make sure
18    that's part of the record, and make sure that you
19    don't have any objections to any of the information
20    that's contained in it.
21          MR. MARSHALL:  We have received it, there's
22    no objections.  And if I could, our compliments to the
23    probation office.  I know those corporate reports are
24    never easy, and it was an excellent report.
25          THE COURT:  Thank you.

1           Well, it's not a common report in most
2    circumstances.
3           Well, Ms. Smith, I know the government would
4    have received a copy of that report.  Do you have any
5    objections to bring to the attention of the Court?
6           MS. SMITH:  No, Your Honor.
7           THE COURT:  All right.  And then,
8    Mr. Brammell, do you have any objections to raise on
9    behalf of your client?
10          MR. BRAMMELL:  No, Your Honor.
11          THE COURT:  I'm going to adopt and accept the
12   findings that are contained in both of those reports.
13          I'm going to specifically find that the
14   recommended sentences in those reports were correctly
15   calculated.  And then we'll file those in the record,
16   but those are filed under seal.  They often contain
17   personal information.  We don't make that public.
18          In the event of an appeal, then those judges
19   and lawyers and parties, of course, would have access
20   to it, but otherwise, it's not publicly available.
21          Let me see if there are any motions that we
22   need to review.
23          MS. SMITH:  No, Your Honor.
24          THE COURT:  I don't think there are.
25          So any time a judge makes a decision about a

```
 1  sentence, he or she considers seven different factors.
 2  And I'm going to let the government address those
 3  factors on behalf of each defendant in turn.  And then
 4  we'll allow the lawyers to address those factors on
 5  behalf of each defendant.
 6          But the final word always goes to the
 7  defendant.  So you have a right to make any kind of
 8  statement you want, Mr. Delk, provide any kind of
 9  information you want from me.  I'm pleased to give you
10  as much time as you would like today.
11          You're not required to.  You don't get points
12  taken off if you choose not to say anything, but it's
13  a right that you have that I respect, and we'll give
14  you as much time as you like.
15          Do you understand how we're going to proceed?
16          THE DEFENDANT:  I do, Your Honor, yes, sir.
17          THE COURT:  Okay.  The other things that are
18  in the record are sentencing memoranda that have been
19  filed in the record.  I've read and considered that,
20  counsel, so be aware of that.
21          And then there are a number of letters on
22  your behalf, Mr. Delk, that have been filed and made
23  part of the record.  My practice is to put 'em in the
24  record, and my practice is to read them, and I've done
25  that as well.
```

1        So first of all, though, Ms. Smith.

2        MS. SMITH:  Thank you, Your Honor.

3        I'd like to start talking about the offense

4    itself here.  And I know Your Honor's not afraid of an

5    academic point, so I'd like to start just briefly

6    talking about the Food, Drug and Cosmetic Act.  This

7    is my first Food, Drug, Cosmetic Act in front of Your

8    Honor.

9        And the system we have in the United States

10   is designed to be a closed system, a perfectly closed

11   system.  And the reason it's designed that way is that

12   so when consumers go to the pharmacy, pick up a

13   prescription, when they buy a bottle of Tylenol off

14   the shelf, they know it's safe.

15       It's an unusual system the way the United

16   States has implemented it, and it imposes, in order to

17   accomplish that goal, great burdens on the people who

18   choose to enter this field.  And it does that because

19   those are the people who are in the best position to

20   know what's going into the substances, and to ensure

21   that they are safe.

22       So you have this very high standard that

23   people operating in an FDA-regulated field that's

24   imposed on them.  And that is not your average context

25   that a crime would occur in, that you have this, you

1 know, very high standard you're holding people to who

2 choose to operate in this space.

3         Now, the corporate entity here, Tailor Made

4 Compounding, operated in an explicit loophole to that

5 perfectly closed system as a 503A compounding

6 pharmacy.  And the reason that loophole exists is that

7 so that if a consumer is allergic to an ingredient

8 that is commonly found in the FDA-approved version, a

9 pharmacy can make them a version that is safe for

10 them.  They can make a patient-specific product that

11 doesn't have the offending characteristics of what

12 standard drug might be available to them through

13 traditional channels.  So we've created this loophole

14 so that consumers needs can still be met, and can be

15 met safely.

16         Again, safety for all consumers in the

17 country is what the goal is here.

18         Now, the company was set up in that loophole,

19 but they operated illegally.  They started

20 distributing unapproved FDA drugs; that's what the

21 company has pled guilty to.

22         So you've got a business that is set up in a

23 lawfully permitted loophole, but doing conduct that

24 does not fit in that loophole.  They clearly take it

25 outside of that loophole in what they're permitted to

1  do.

2          Second, you've got Mr. Delk himself, who set

3  up the business operating in this way.  And what he

4  has pled guilty to is operating a wholesale facility,

5  selling drugs in wholesale quantities, which again,

6  would take you out of the 503A loophole context.

7          If he had registered as a wholesale seller of

8  these drugs, even for legal drugs, that would have

9  triggered enormous alarms.

10         So you've got two different ways in which the

11 Food, Drug and Cosmetic Act are being violated.  And I

12 mention that in that distinction because it -- it --

13 it's why this is a criminal case.  It's using a

14 business, using employees, making a lot of money, both

15 selling unapproved drugs, and selling approved drugs

16 in ways that are not authorized.

17         The seriousness of this is why we're here, is

18 why I'm taking a few minutes to -- to talk about this

19 statutory framework.  Because a compounding pharmacy

20 is permitted to operate in this loophole regulatory

21 framework.  And for the FDA and for federal law

22 enforcement to catch this is quite difficult.  For us

23 to get to the point that we can execute a search

24 warrant at a functioning compounding pharmacy is not

25 that common.  And it's why the sentence here needs to

1  reflect the seriousness of the offense, and in

2  particular, to how seriously we take violations of

3  this Act, how seriously we take this intentional

4  effort to undermine the safety of our system, and the

5  regulatory framework that is set up to protect people.

6         I do, of course, any time I'm here under an

7  information, credit Mr. Delk with pleading guilty,

8  with doing that without going the route of indictment,

9  without, you know, frankly what would have been

10 another few years of investigation and significant

11 government resources.

12        The fact that we're here at sentencing a year

13 after executing that search warrant, sentencing both

14 the company and the person running that company is

15 significant, and I think he rightfully gets credit for

16 that in the presentence report.

17        And really don't -- you know, the lack of

18 criminal history on behalf of Mr. Delk is already

19 reflected in his sentencing guidelines, but is

20 certainly to his credit.

21        And then the company agreeing to forfeiture

22 of the sales from 2019, of the $1.7 million.  Again, a

23 huge credit to Mr. Delk and the company for saying

24 what we're doing is wrong, and wanting to move forward

25 from that.  But none of those things alter how serious

1  the effect of this conduct is.

2        And now, you know, to address the defendants

3  separately as to what the United States thinks under

4  3553 would be an appropriate sentence, I'll first

5  address Mr. Delk.

6        And, you know, he is sentenced here for the

7  failing to register with the State Board of Pharmacy

8  in this wholesale production of legal substances.

9        And, you know, when you read the statute, or

10  when you read the information, it reads as kind of a

11  technical regulatory offense.  And I think what

12  counters that is that when you look at the Act as a

13  whole, most of the offenses, misbranding offenses,

14  selling unapproved new drugs have a three-year

15  statutory cap.  But for this conduct, Congress said,

16  You have a ten-year statutory cap.

17        Now, the guidelines are not anywhere near

18  that, of course, but I think that that can tell this

19  Court how significant the conduct violating this

20  statute is.  That it is treated differently than

21  simply selling an unapproved new drug, that

22  distributing as a wholesaler is a meaningful,

23  problematic conduct, that this is a criminal statute

24  with a ten-year statutory max, that this is different

25  than just a run-of-the-mill Food, Drug, Cosmetic Act

1 case.

2        And I mention that because the guidelines are

3 very low, you know.  And I'm not disputing the

4 guideline range, that it's zero to six months, and

5 he's an eight, you know, that he's accepted

6 responsibility for that, but I do think it is an

7 indicator of how serious this is, and that sentence

8 under this statute needs to reflect that.

9        THE COURT:  So is the seriousness focused in

10 this case on -- on we have a regulatory framework,

11 it's really important that everyone follow this

12 framework, and this was kind of blatantly ignored in

13 this case on two levels?

14        Or is this a specific seriousness that

15 relates to the harm caused by these drugs in addition?

16        So the -- you gotta follow the rules is a

17 given, and that's a serious crime; there's no question

18 about it.  But is this -- are these drugs then because

19 the rules weren't followed, harming people?

20        MS. SMITH:  I think it's both.  So what

21 Mr. Delk has pleaded guilty to involves a substance

22 that is a legal substance.  And so his conduct is

23 focused on the manner in which it was being sold, that

24 a compounding pharmacy should not be selling a hundred

25 vials of this drug to a doctor because that's not what

1  they're not signed up to do.  That conduct is

2  explicitly outside of what they're permitted to do,

3  and therein the harm is to the system is that --

4        THE COURT:  This is kind of an aside, but I

5  saw the doctor referenced, a doctor, Doctor 1, I think

6  referenced in the presentence report.

7        Is there a separate prosecution going on in

8  California as it relates to that doctor; are you

9  aware?

10       MS. SMITH:  A criminal prosecution?

11       THE COURT:  Yes.

12       MS. SMITH:  Not to my knowledge.

13       THE COURT:  Okay.

14       MS. SMITH:  Not to my knowledge.  That

15  conduct on the part of the doctor is also not legal.

16       THE COURT:  Right.

17       MS. SMITH:  But, you know, the Act imposes

18  the obligation on the entity either producing or

19  selling or distributing the drug.  That's where the

20  Food, Drug, Cosmetic Act focuses.

21       A doctor can also violate it.  But if the

22  doctor's not the one producing it, the obligation is

23  not the same.

24       THE COURT:  Right.

25       MS. SMITH:  And whether there are regulatory

1  side effects for that physician, I couldn't share with
2  the Court at this time, but there ...
3         THE COURT:  You can't prescribe an unapproved
4  new drug if you're a doctor?
5         MS. SMITH:  Right.  Right -- well, and the
6  doctor -- excuse me -- the drug at issue with that
7  particular doctor, according to the pleadings in the
8  case, is a substance that is approved.
9         The substances for the company, yes, some of
10 them are dangerous.  There is a reason those are not
11 approved FDA substances.  There is a reason it was a
12 problem that the company was selling huge quantities
13 of these two physicians.
14        So, you know, there is a long list of drugs,
15 and we focused in the pleading on the SARMs category
16 of drugs and why those are problematic.  But there are
17 -- there's a reason why each of those substances is
18 there, there's a reason why each of those substances
19 is clearly not an approved substance.  So kind of
20 different harms, depending on the -- on the conduct
21 and the charging instrument, if that makes sense.
22        THE COURT:  Yes.
23        MS. SMITH:  Does that answer your question?
24        THE COURT:  Yep.
25        MS. SMITH:  So just to -- to wrap it up with

1   my -- by my big picture argument here.  Obviously, my

2   focus is on the sentence reflecting the seriousness of

3   the offense.

4          I think here, general deterrence is also a

5   huge factor.  Any time a compounding pharmacy or

6   someone who runs a compounding pharmacy is sentenced,

7   that can send a message to the entire industry of what

8   the cost is for operating, you know, outside of this

9   framework.

10         So for Mr. Delk in specific for the charge

11  that he's pleading to, you know, noting and not

12  disputing the history and characteristics of Mr. Delk

13  and his, you know, letters from family, the thing that

14  did -- you know, and I don't dispute that he's been a

15  leader and created this business that generated a lot

16  of jobs in the area.  But when the business itself is

17  violating the law, and he's employing people and

18  having them in their daily job violate the law, it

19  kind of discounts the value of that.  And I know he's

20  got letters from his employees.

21         And the risk there is, you know, the Food,

22  Drug and Cosmetic Act, the regularly misbranding count

23  is a strict liability offense.  So any individual who

24  is engaged in this conduct, whether they know it's

25  wrong or not, can be charged with a misdemeanor.

1    And so to have a business that is not in its

2    entirety operating illegally; they were selling some

3    drugs that they were permitted to sell, but to set up

4    a business and then exploit that entity and exploit

5    this organization of the people working for it to do

6    something that's illegal, I think makes the offense

7    worse and should also be taken into account.  And I

8    think the Court can, as the owner of the business who

9    set it up.

10    I think there are a number of factors that

11    are not necessary to take into account, particularly

12    providing the defendant with educational or vocational

13    training or medical care.

14    You know, while I don't think Mr. Delk is

15    going to -- we know he's not going to continue to

16    operate a compounding pharmacy.  But, you know, I

17    think the sentence can reflect the fact that pleading

18    guilty to a felony is not just the cost of doing

19    business when wanting to operate sort of in this

20    aggressive illegal way.

21    Given that the guideline range is zero to six

22    months, and the sentencing guidelines, you know,

23    saying that probation is likely the correct outcome

24    for the Court to consider under these factors, you

25    know, I think incarceration would be appropriate and

1   completely supported by the facts.

2         Given that probation is more likely on the
3   table, I would ask that one of the conditions of it be
4   a period of home incarceration, that there be some
5   curtailing of his liberty as a consequence for this
6   offense.

7         You know, it's not a huge heroin case, it's
8   not, you know, murder-for-hire, but something like
9   home incarceration does still have meaning for a
10  businessman.  And so would ask that that be a part of
11  the sentence if probation is part of it.

12        I would also ask that the term of probation
13  be of a meaningful length, that it be longer than a
14  year.  You can go up to five years.  I would ask for
15  three, four, five years so that there is significant
16  supervision and involvement by probation.

17        I'd also ask that a condition be not to work
18  in an FDA-regulated field, and that probation -- I
19  know typically, we include language about monitoring
20  new lines of credit, but would ask that that be
21  expanded, that any new business ventures or business
22  ownership changes in terms of its assets or employment
23  be disclosed to probation.

24        I would also ask that a fine, a maximum fine
25  be imposed on Mr. Delk, which I think is more than

1 supported by the 3553 factors.

2        As for the company, I know it's always very

3 tricky how you analyze these factors for a

4 corporation, and I understand that the company, the

5 assets of the company are on the verge of being sold,

6 so the defendant, as it exists, Tailor Made

7 Compounding will functionally cease to exist.

8        I'm in a kind of a tricky spot.  Because to

9 the extent it is still going to exist, I think that

10 there should be supervised probation for the corporate

11 entity.  I think it would not be terribly burdensome

12 for probation to work with the FDA regulatory folks to

13 visit the business and ensure they're not selling all

14 of the substances in the plea agreement.

15        I understand that sale is about -- it's going

16 to go through next week, so I don't have an elegant

17 solution for that.

18        I mean, I think if the judgment imposes

19 probation with those conditions, it'll be an issue for

20 the next six days.  And then if the sale goes through,

21 there won't be anyone to supervise 'cause the entity

22 won't exist.  So would advocate for that, but I don't

23 know if there's some more elegant solution in how you

24 sentence a company that's likely going to cease to

25 exist.

1          THE COURT:  Thank you, Ms. Smith.

2          MS. SMITH:  And just the last thing.

3          THE COURT:  Sure.

4          MS. SMITH:  I think the forfeiture has

5     satisfied all the financial elements for sentencing

6     the defendant.

7          THE COURT:  Okay.  Thank you.  Thank you.

8          MS. SMITH:  Thank you, Your Honor.

9          THE COURT:  Well, Mr. Brammell?

10         MR. BRAMMELL:  Good morning, Your Honor.

11         You know, this is a -- this is an unusual

12    case, I guess, where there aren't objections to the

13    PSR, and it seems like all the parties and probation

14    agree with the appropriate guideline range being in

15    Zone A., zero to six months.

16         So in light of that, I don't want to repeat a

17    lot of what's already been said and put in the record,

18    but I do want to make a few points on behalf of

19    Mr. Delk.

20         First of all, as the prosecution referenced,

21    he did accept responsibility early in this case.  He

22    presented on an information, and he should receive

23    credit for accepting responsibility.

24         So we would ask that you sentence him within

25    that guideline range.  And I'm not asking for the

1    absolute bottom of that guideline range.

2          We would agree with the government that a

3    period of home incarceration is appropriate in this

4    case.  I don't think it needs to be a full six months.

5    But we're not disputing that home incarceration would

6    be an appropriate penalty.

7          So that would be appropriate for a number of

8    reasons in this case.  One is the strength of

9    Mr. Delk's character.

10          As I know the Court reads all the letters of

11    support, as it can see in those letters, and see

12    through his history, and as it's seen in this

13    proceeding, by him accepting responsibility early, he

14    does have a strong character, and he's often helped

15    those in need without any expectation of repayment or

16    recognition.

17          He's the father of two young children, one of

18    whom's having a birthday today actually.  So they're

19    two and seven.  And while neither one of them are old

20    enough at this point to understand the seriousness of

21    these proceedings, it's his hope that when they're

22    older, they'll look at what he did and the example

23    that he set and the way that he accepted

24    responsibility, and it'll be a teaching lesson for

25    them.

He's sold his company.  He's cut ties with it in that way by selling it at an arm's length transaction.  He's also relinquished voluntarily his pharmacy credential that he had.

And he has no criminal history, and is very, very unlikely to ever reoffend.

On top of the fact of his good character and that he's no longer an owner of this company, he's also caused his company -- and I don't think this is -- this can't be overlooked -- he's caused his company to pay back 1.7 -- nearly $1.8 million in forfeiture.  And I do think he deserves some credit for coming clean and for causing that repayment.

In terms of the seriousness of the offense, I don't want to do anything to discredit how serious it is; this a federal felony.  There aren't any federal felonies that aren't serious.  They come with real repercussions, including the fact that he will be a felon.  He'll lose all the rights that -- or many of the rights that come with that status.

He's voluntarily relinquished his credentials.  He's agreed to pay the 1.7 or $1.8 million in forfeiture.  I think these are all indicia of how serious he's taking this offense.

On top of that, in terms of future

1  deterrence, after his period of -- we hope when home

2  incarceration is over, a period of probation is

3  appropriate.  We don't believe that it needs to be

4  five years, probably something more in the middle.

5          You know, another deterrent here is this is

6  his first federal felony.  He has no criminal history.

7  If this ever happens again, I think Mr. Delk

8  appreciates the seriousness of having a criminal

9  history in the federal system.

10          So there are deterrents out there just in

11 being a felon and in knowing the consequences and the

12 severity of the consequences if you come and get a

13 second strike in the federal system.  So I think that

14 should be taken into account, too.

15          He's been completely compliant on pretrial

16 release.  He hasn't had any issues in terms of obeying

17 the guidelines that the Court set.

18          In light of that, once -- if the Court is

19 inclined to grant him home incarceration, when that's

20 over, we expect that his financial commitments will

21 have been fully paid to the government.  If the Court

22 imposes a fine today, which I think a guideline fine

23 would be appropriate, he intends to pay that fine

24 immediately.

25          Traditionally, to continue the financial

1 reporting as a condition of probation is triggered if
2 they're not meeting their payment schedule.  As a
3 result -- or as, you know, he's going to have all of
4 his obligations already paid.  We don't believe that
5 there needs to be continued financial reporting during
6 that period of probation.
7        On top of that, Mr. Delk is involved in other
8 business ventures across the country, some outside of
9 the country.  We would ask that if -- or when he's in
10 that period of probation, that the Court consider a
11 condition that allows him to keep the probation office
12 apprised of his travels, but not limit his travels to
13 the Eastern District.  Just as an administrative --
14 some administrative ease, he travels a lot for
15 business, and that has worked so far while he's been
16 on pretrial release.
17        Just one moment, Your Honor.
18        THE COURT:  While you're doing that,
19 Ms. Smith, does the government have a view about the
20 travel restriction, whether the flexibility that the
21 defendant's asking for --
22        MS. SMITH:  Not for --
23        THE COURT:  -- would you be objecting?
24        MS. SMITH:  -- not for routine in-country
25 travel.  You know, I think he's given up his passport,

so -- or he's not given up his passport, but think for
the period of probation that I'd defer to probation on
whether international travel would be appropriate.

THE COURT:  Okay.  And are you asking for
international travel during the period of probation?

MR. BRAMMELL:  I mean, yes, Your Honor, on a
limited basis, I think that would be appropriate.  And
we could certainly inform the probation office of when
that would happen.  I think it would be limited.  But
some of his business interests are outside of the
country, and they do require international travel.

THE COURT:  And has he given the probation
office his passport, or has he retained his passport?

MR. BRAMMELL:  I believe he's retained it
throughout the period of probation.

MR. MARSHALL:  Judge, the Court may recall,
there was some discussion about an investment property
Mr. Delk has outside the country, and there were
arrangements made that if he needed to make a trip
there, the Court, I believe, blessed that at the time
of the plea, which is why he has a passport.

THE COURT:  Is that investment property or
vacation property?

THE DEFENDANT:  Both.  I mean, we rent it out
to subsidize the cost of income.

1        MR. BRAMMELL:  Your Honor, the only other

2   point I would make is during a period of probation,

3   there was a suggestion made that there be some

4   condition that would limit his ability to invest in

5   other interests.

6        He doesn't have any -- he's not going to

7   continue to operate a business like the one here, but

8   he does have rental properties, he has relationships

9   in that way.  So I would just want to make sure that

10  whatever conditions of probation that we craft are not

11  overly stringent so as to prevent him from having

12  those existing relationships that he already has and

13  the existing businesses that are already in place.

14       THE COURT:  Typically the restrictions that

15  we focus on are reporting restrictions.  In terms of a

16  prohibition, it'd be a prohibition in a business that

17  deals with the distribution of prescription drugs, for

18  example, and obviously, you're not in a position to

19  engage in that.

20       So what -- what we'll try to do in the

21  context of the conditions is there will be some

22  reporting required.  It doesn't necessarily -- there

23  will be a prohibition as it relates to a very specific

24  kind of business interest going forward over the next

25  period of years, but we also want the probation office

1 to have a good picture of what's going on for that

2 period of time as well.

3      MR. BRAMMELL:  Your Honor, I don't think I

4 have anything else to say, but Mr. Delk would like to

5 speak to the Court.

6      THE COURT:  We'll turn to you in a moment,

7 sir.

8      Let me ask Mr. Brown if you would -- what

9 would be the typical travel condition in this case

10 that would be in place?

11      PROBATION OFFICER BROWN:  Your Honor,

12 typically with someone like Mr. Delk, we would usually

13 recommend that he notifies the probation office of

14 where he wants to go, for what purpose.  And then if

15 we seem that it may be a problem, we would petition

16 the Court and let the Court know.

17      Typically, if it's -- if we can tell that

18 it's for business purposes, we usually don't have a

19 problem with that, Your Honor.

20      THE COURT:  Okay.  Thank you.

21      Thank you, Mr. Brammell.

22      Mr. Marshall, I'm going to turn to you next,

23 and, of course, we'll give you a chance to speak, too,

24 Mr. Delk.

25      MR. MARSHALL:  Thank you, Judge.  I'm sure

1  Your Honor will breathe a deep sigh of relief when I

2  say I'm going to be brief because that's not always my

3  penchant.

4          THE COURT:  It's not always the case even

5  after you say that, Mr. Marshall, so --

6          MR. MARSHALL:  That's correct.  That's

7  correct.

8          THE COURT:  -- so I'm not relieved yet.

9          MR. MARSHALL:  In fact, in my first trial

10  before Your Honor, I think I argued Rule 29 for about

11  two hours when we had a video of the entire offense,

12  but --

13          THE COURT:  But here's what you know, you

14  always have as much time as you like.

15          MR. MARSHALL:  Well, thank you for that.  I

16  appreciate your patience as always.

17          Judge, you know, I and my law firm and a

18  couple of our young associates here today, and they

19  can attest to it even in their early careers, it -- a

20  lot of our clients are carte blanche.

21          I stand here on behalf of a corporation.  But

22  that doesn't mean I don't have something to say

23  because I've really appreciated and enjoyed working

24  for this company and getting to know its owner.

25          It's not every day in a case that promises to

1 drag on for two or three years with document

2 productions and discovery and fights about this and

3 that, that the owner of a corporation or an LLC, in

4 this case, comes to counsel and says, Hey, we've been

5 out of bounds.  Let's -- let's be minimal.

6          And I think Ms. Smith would attest, it wasn't

7 but maybe five to six weeks into our engagement when I

8 was making a call to her saying, What do you gotta

9 have?  How do we face this?

10          And it's been my pleasure to represent a

11 company with that kind of leadership and guidance.

12 And I think with an ownership that has refocused

13 itself.

14          A couple weeks ago, I needed to speak to

15 Mr. Delk for an update on the sale of his company

16 because I was going to be filing sentencing memorandum

17 and needed some hard answers about whether or not the

18 assets were going to be sold.

19          And while I was talking to Mr. Delk, I could

20 hear shuffling and rumbling in the background.  And

21 our call lasted a good while, probably 30 to 45

22 minutes.  And along the way, I sort of stopped him and

23 said, What'd you just do?  What was I hearing?  And he

24 said, My little boy forgot one of his gloves, and the

25 teacher called and said he couldn't go out to recess

1  without an extra glove.  And I've been talking to you

2  on the one end and the school on the other.

3       I think that says something about -- and

4  maybe helps the Court understand that this company in

5  the moments after the agent showed up began a shift of

6  priority and focus, and it's going to culminate on

7  March 3rd now, I'm told, in the sale of all its

8  assets.  We have said to the United States we're out

9  of the space, as they say.  We're out of this

10 industry.  The company intends to move off into

11 nothingness.  Its owner, as I understand it, intends

12 to move off into other endeavors and away from the

13 compounding pharmacy space.  It's a phrase I've

14 learned to pick up when I heard Ms. Smith say it

15 earlier.  Apparently in this industry it's the space

16 you worked in.

17      So what I ask the Court for in light of the

18 extraordinary forfeiture that's been paid expediently,

19 in light of the rapid, full acceptance of

20 responsibility on behalf of the company, I ask your

21 Honor to impose a sentence that we requested in the

22 sentencing memorandum, namely a $1,000 fine, the

23 forfeiture that's already been imposed and paid, and a

24 term of probation that would transition at the Court's

25 discretion once the asset sale is complete on March

1  3rd.

2         Having seen over the years some of the other

3  examples of the probation office's efforts to

4  supervise a corporation, it's an endeavor for an

5  operation, and frankly, it is not funded to really

6  dive in.  I know when the Shalashes' warehouse empire

7  was prosecuted, and it was very hard to supervise the

8  manner and means in which equipment and property came

9  in and out of the warehouse.

10         Here fortunately, there's going to be nothin'

11  left to supervise after March 3rd.  And so we would

12  ask the Court if it needs to go ahead and make it

13  supervised for now, with a switch factored into the

14  written judgment that says, Upon proof of the sale of

15  the company's assets provided to probation, the

16  supervision would then essentially die and return with

17  continue unsupervised.  I will say --

18         THE COURT:  Doesn't it die by operation

19  anyway?  I mean, if the corporation doesn't exist,

20  then --

21         MR. MARSHALL:  Yes.  I do not oppose

22  supervised probation for a company that really doesn't

23  exist, except on paper.

24         I just know from my own probation officer hat

25  on what a hassle it becomes to document that you're

1 actually supervising something that doesn't exist.
2 And I'm trying to save my friends there a little
3 hassle.
4        But if the Court feels better with supervised
5 probation, obviously, we will not object to that.  I
6 just think it makes some sense under our unique
7 circumstances.
8        Unless the Court has other questions, again,
9 I'm going to try to be very brief, and really don't
10 think I have anything else to add.
11             THE COURT:  Okay.
12             MR. MARSHALL:  Thank you.
13             THE COURT:  Well, Mr. Delk, let me hear from
14 you, please.
15             THE DEFENDANT:  Thank you, Your Honor.
16        First, you know, I'm sorry that we're here;
17 I'm sorry and accountable for -- for the actions, and
18 I can assure you, Your Honor will never see myself in
19 your courtroom again.
20        I think this is -- I just turned 40 last
21 year -- it was a big year for multiple reasons.  And I
22 think the -- the amount of perspective that this has
23 kind of given me has -- I just really had changed
24 quite a bit, besides causing the company be sold and
25 kind of doing that, it -- it has brought to the light

1  of what's important and what -- what matters, you

2  know.  I mean, I'm -- and besides accepting

3  responsibility for what's happened, I mean, I'm really

4  kind of looking through and taking actions on

5  everything that I own right now, and anything I've

6  invested in, and how can I, you know, do triple

7  checks, and, you know, because we have other

8  investments that are in the healthcare industry, and

9  hiring different regulatory specialists, and at large,

10  just to audit everything.  I'm trying to -- am

11  spending more time with my kids and trying to be more

12  from a board level.  And, I mean, I told Mr. Marshall

13  multiple times that I'm probably all done.  I think

14  after these things kind of play itself out, I've had a

15  good run.  And the level of sphere and I guess

16  absoluteness of this whole deal has kind of caused me

17  to close some areas.

18          So I just want to say I'm here -- I'm sorry.

19  I'm here to accept the sentence you provide, and, you

20  know, assure Your Honor, you'll -- you'll never see me

21  again.

22          THE COURT:  Okay.  Thank you, Mr. Delk.

23          MR. DELK:  Thank you.

24          THE COURT:  You can be seated.

25          Well, I want to begin by talking about the

statutory factors that I'm required to consider any
time I impose a sentence, and there's seven of them.
Some of them, as the government's pointed out, aren't
really applicable in the case like this, but several
of them are, and I want to kind of give you the
reasoning related to those factors that undergirds the
sentence that I'm going to impose in this case.

I'll say preliminarily that I suspect you
never thought you'd be here on a day like today, did
you, Mr. Delk?  You've worked hard, you've been a
successful business person, you have acquired many of
the accoutrements of success in terms of your cars and
your homes and the things that one adds as they are
increasingly successful.

And I suppose it's probably fair to say that
the reason you're here ultimately is greed, and that
in some fundamental level, that desire to continue to
acquire got in the way of your desire to do it the
right way.

And I understand there's some other factors
about your employees and about building a business,
and providing a business for them.  But you're going
to be able to go forward, and you're going to be able
to put this behind you, and you're going to be able to
continue to be involved in business interests, and

1    perhaps build a new business some day, and I don't
2    doubt you're going to be successful.
3         But part of what we want and hope for you is
4    that you're successful as a person, and it's going to
5    require some really deep soul-searching.  It's going
6    to require you to come to terms with the fact that you
7    made the choices that you did.
8         Now, nobody wants to be judged on their worst
9    day.  This is probably one of your worst days; I
10   understand that.  And so we as judges take into
11   account lots of different things when we make a
12   decision about a sentence.  And I sometimes -- I teach
13   sentencing, and I tell those students that my job in
14   large measure is reading biographies, and they're
15   called presentence reports.  And we get a lot of
16   information about individuals.  I learn a lot through
17   sentencing memoranda.  I learn a lot listening to you
18   today, reading the letters of people who care about
19   you, people who've worked with you, people that are
20   related to you.  And all of that goes into making the
21   decision today.
22        I'm required under the law to look at the
23   recommendation that's in front of me, and it's a
24   sentence that certainly probation is one of the
25   primary options.  There's an incarceration component

1  to it; it's very modest in federal court.  That
2  doesn't feel modest, I'm sure, to you as a defendant
3  to contemplate up to six months in federal prison.
4  But there also is a period -- if there were to be a
5  period of traditional incarceration, of supervision
6  that could be imposed in this case.

7        And then the fine range is very applicable in
8  this case.  It's $2,000 on the low end, and $20,000 on
9  the high end.

10        It's kind of where I begin.  Your lawyers
11  have explained to you the complex formulas we use to
12  kind of create those recommendations.

13        There are a number of policy statements that
14  are a part of a sentencing scheme.  I certainly always
15  consider those, to the extent that they're applicable.

16        But then that brings me to the third factor.
17  Sentencing needs to accomplish a number of different
18  public policy goals, if you will.  One of them is it
19  ought to reflect the seriousness of the crime.  And I
20  think the government's done a really good job of
21  articulating why this is -- this is serious.  I mean,
22  we are kind of as a nation in the midst of watching
23  the regulatory process in a way that is just critical
24  to us as a country, and recognizing the importance of
25  it.  And everybody wants a vaccine, and we want it

1   quick.  But you can imagine if the rules aren't

2   followed and the protocols aren't followed and the

3   guidelines aren't followed, the disastrous result that

4   could happen if it's not done right.

5         So it is serious to not do it right, to

6   engage in the wholesale distribution of drugs that you

7   don't have a license to distribute in that manner, to

8   be distributing drugs that are not FDA-approved

9   obviously is -- is not inconsequential.

10         There is a need to promote respect for the

11   law and to deter future conduct, and that is not

12   simply about you.  That's about the kind of community

13   as a large.  When the corporate America that works in

14   this space is looking at this case, they need to

15   understand that there'll be a consequence.  You bend

16   the rules, you don't follow 'em, and then it's going

17   to be more than just a slap on the wrist and you kind

18   of get to go on with your profits, and move forward.

19   There needs to be accountability.  And I think some

20   limitation on liberty is part of that in this case.  I

21   think that's -- that is warranted.  I think both

22   parties agree with that and so do I.  As part of that

23   accountability, there's significant forfeiture in this

24   case.  There'll be a significant fine as well which

25   will focus on those particular elements of this

1   factor.

2           This is not a case in which you need

3   rehabilitation services.  Most defendants that are

4   kind of standing in front of me or appearing in front

5   of me who committed a drug crime, are profoundly

6   addicted, they don't have job skills, they, you know,

7   desperately need resources in order to be able to put

8   their life together.  And you're blessed not to be in

9   that position, Mr. Delk.  That's not your story.

10  That's not why you're here.  It's not the kind of

11  crime that you've committed.

12          This isn't a crime in which we need to

13  incarcerate you because of a dangerous criminal

14  history and it's the only way we can prevent future

15  crimes from being committed.  That doesn't apply in

16  this particular case, but it's one of the factors that

17  I'm required to consider.

18          Ultimately, there has to be a just

19  punishment.  And I know you're remorseful; you regret

20  this.  And I know I won't see you again.  I think it

21  would be highly unlikely that I'll see you again in

22  this courtroom.

23          But you owe society a debt, more than just

24  paying the money back, more than, you know, just

25  losing the interest in this business, you owe society

1  kind of a broader debt here for having engaged in

2  conduct that just harms us generally.  That's the

3  punitive part of that.  And I'll fashion what I think

4  is a just punishment in this case to address that

5  particular factor.

6          I began with the remarks that I referenced

7  because I really want you to understand that despite

8  all the math in federal sentencing, judges take a lot

9  of time to think about the individual circumstances in

10 a person that comes before me.  And in fact, that's a

11 factor that I'm required to consider.  I'm supposed to

12 look at the nature and circumstances of the conduct

13 here, as well as your history and characteristics.

14 And there's much that's mitigating about that.

15         I mean, I think you, on a personal level,

16 have built a business that has provided good jobs for

17 people who need them, and you've obviously been

18 successful in many legal ways in this particular

19 business interest.

20         You don't present as somebody who brings, you

21 know, a past criminal conduct.  I've often thought

22 what my criminal conduct would look like if it was

23 part of the PSR.  It'd be pretty close to yours, to be

24 honest, probably not quite the number of speeding

25 tickets, but I don't have a car that is as fast as

yours either. So -- but, you know, it's this
recognition, this commitment to your family and your
children that, you know, you're not a person that
wants to live like this. That's not what you want to
do.

It's hard for us as parents when we fail with
our kids, right? That's a hard thing. You're going
to have to explain this at some point and some day,
and that's -- that's a really difficult thing because
as parents, we want to be role models by succeeding,
right? That's what we want. We want to say, Look at
this successful thing I've done. I hope you'll grow
up and you'll be able to do this as well. It's a lot
harder for us when we've failed. But here's what I
know: We all do. Every one of us. And you've got
this opportunity to do something really, really
important, Mr. Delk. You've got this opportunity to
demonstrate to these young children at some point what
a person of character and integrity does when they
fail. That's a big, big deal because they're going to
fail. At some point they're going to make decisions
and mistakes that they wish they could take back. And
it's a real important part of the maturation process
to come to terms with how you live your life when you
disappoint the people you love, when you make

1  decisions that are out of character or decisions that
2  debase your character in the way that the decisions
3  that you've made have done that.  And I challenge you
4  to do that going forward.  And you're going to have to
5  grieve this because there are consequences that come
6  with this.  But there's a lot of good that can come
7  out of this point in your life, kind of this mid-point
8  in your life in terms of taking stock and moving
9  forward and making some different choices going
10 forward.

11        I've considered the different options that I
12 have in front of me.  Probation obviously's an option
13 in this case.  I do think it's appropriate in this
14 case.

15        You should not get a harsher sentence or a
16 more lenient sentence because you're in my courtroom,
17 and I'm going to sentence you to what is considered a
18 guideline sentence in this case, so I've addressed
19 that.

20        And then there's the issue of restitution,
21 which is not applicable in this case because of the
22 other financial arrangements that have been made.

23        Now those are all the factors that I've
24 considered, and so I'm going to articulate the
25 sentence as it relates to Mr. Delk.

1           If there's no legal objections, counsel, to

2 the sentence that I impose, or the process that we've

3 used here this morning, it's going to be imposed as

4 follows.

5           Would you stand, please.

6           Pursuant to the Sentencing Reform Act of

7 1984, as modified by the subsequent case law, I do

8 find that the following sentence is sufficient, but

9 not greater than necessary to comply with the purposes

10 of 18 United States Code, Section 3553(a).

11           Accordingly, it's the judgment of the Court

12 that the defendant Jeremy Delk is hereby placed on

13 probation for a period of three years.

14           You must immediately report to the United

15 States Probation Office located in the Community Trust

16 Building, 100 East Vine Street, Suite 600 here in

17 Lexington following the conclusion of this hearing.

18           While on probation, you must not commit

19 another federal, state, or local crime.

20           You must comply with the mandatory and

21 standard conditions that are set forth in the judgment

22 and commitment order that have been adopted by the

23 Court.

24           And you must comply with the following

25 additional conditions:

1          You must not possess a firearm, destructive
2  device, ammunition, or dangerous weapon.
3          And you must refrain from any unlawful use of
4  a controlled substance.
5          And you'll be required to submit to one drug
6  test within 15 days of release from imprisonment, and
7  at least two periodic drug tests thereafter.
8          In addition, you must comply with the
9  following special conditions as adopted by the Court:
10          You will be placed on home detention for a
11  period of four months to commence within 30 days.
12          During this time, you must remain at your
13  place of residence, except for employment and other
14  activities approved in advance by the probation
15  officer.
16          And you must be monitored by a form of
17  location monitoring at the discretion of the probation
18  officer, and pay the costs of the program.
19          You must also complete 100 hours of community
20  service as approved and directed by the probation
21  officer.
22          You must also provide the probation officer
23  with written proof of the number of hours completed.
24          You must abstain from the excessive use of
25  alcohol.

1          You must not purchase, possess, use,

2    distribute, or administer any controlled substance or

3    paraphernalia related to controlled substances, except

4    as prescribed by a physician, and must not frequent

5    places where controlled substances are illegally sold,

6    used, distributed, or administered.

7          And you must provide the probation officer

8    with access to any requested financial information.

9          You further must not incur new credit charges

10   or open additional lines of credit without the

11   approval of the probation officer, unless you're in

12   compliance with any installment payment schedule

13   that's in place.  Or that particular condition won't

14   be imposed at the time that you -- after which you pay

15   the fine in this particular case.

16         So once you've paid the fine, there'll no

17   need for that reporting condition.  But until that

18   happens, you'll have to abide by that particular

19   reporting condition.

20         You must immediately report your interest,

21   either directly or indirectly, in any new business or

22   corporation, or the registering of a business or

23   corporation to your probation officer.  It doesn't

24   prevent you from engaging in a new business interest.

25   It's about the importance of communicating that

1  information to the probation officer so that they can

2  have a full picture of your general compliance with

3  these rules.

4         And then you must refrain from engaging in an

5  occupation, business, or profession involving the

6  distribution of prescription drugs either directly or

7  indirectly without the approval of the probation

8  officer.

9         And then finally, we'll incorporate by

10 reference the reporting requirement as it relates to

11 your travel.

12        So your travel won't be restricted, but

13 you'll have to report to the probation officer prior

14 to your travel.  So it will be important to give the

15 probation office an opportunity to review it, make

16 sure it seems to be appropriate, or raise any concerns

17 with the Court, if necessary.

18        Based on your financial situation, I am going

19 to impose a fine at the top end of the guidelines of

20 $20,000 in this matter, and then you'll be required to

21 pay to the United States a special assessment of $100,

22 which is due immediately.

23        Counsel, let me see if there's any legal

24 objection to the sentence I've articulated or the

25 process we've used to impose that sentence.

```
 1          MS. SMITH:  No objections, Your Honor.

 2          THE COURT:  Okay.

 3          MR. BRAMMELL:  No objection, Your Honor.

 4          THE COURT:  All right.  Well, I'm going to

 5   order that that sentence be imposed as I have stated.

 6          I'm required to notify you in writing of any

 7   appeal rights that you may have.  So we're going to

 8   have that written notice directed to you.  And you can

 9   review that with your lawyer.  It's just a notice.

10   We'll make sure you have a copy for your own records,

11   and then we'll file a copy in the court record.  So

12   let's have that delivered to the defendant.

13          Mr. Delk, you can be seated, kind of look

14   over that, and talk to your lawyer about that as

15   necessary.

16          And then while that's occurring,

17   Mr. Marshall, is there anything else you need to say

18   on behalf of the corporate defendant here?

19          MR. MARSHALL:  No, Your Honor.

20          THE COURT:  Okay.

21          MR. MARSHALL:  Other than to point out how

22   strange it seems to stand here to be sentenced.

23          THE COURT:  Nobody wants to be in that

24   position, right?

25          MR. MARSHALL:  No, sir, never.
```

1          THE COURT:  All right.

2          Now, the defendant Mr. Delk has signed the

3  notice of appeal rights.  We'll file that in the

4  record.  He's kept one for his records.  We'll further

5  order a judgment of the conviction will be prepared

6  and entered in the record as well.

7          Well, sentencing corporations is kind a

8  unique practice in federal court.  Corporations can be

9  culpable as well as individuals, so can be held

10 accountable.  And the consequence for a corporation is

11 often an economic consequence for the corporation.

12 It's oftentimes a consequence as it relates to

13 monitoring and supervision, the period of time as it

14 relates to making sure that there's no further

15 criminal activity that takes place.  There, of course,

16 is no recommended period of incarceration or no

17 guidelines to consider in this particular case, other

18 than the statutory provisions, which provides for up

19 to five years of probation as it relates to the

20 corporation.

21         The maximum fine in the corporation context

22 in this sense is the $1,000.  And this isn't a

23 restitution case, although there is a special

24 assessment as well of $125 in this particular matter.

25         The traditional factors don't fit neatly

1   because they typically, under 3553(a), are focused on

2   individuals in terms of their history and

3   characteristics and the need for treatment and -- but

4   some of the factors do apply.  You know, like how

5   serious this crime is.  The corporation needs to have

6   some accountability from a corporate standpoint.

7   There needs to be a sense in the economic community

8   that there are consequences where corporations are

9   engaged in this kind of conduct, so those certainly

10  apply in this particular case.

11          Ultimately, I think you're correct in terms

12  of your argument, and I think the government agrees in

13  terms of kind of the options that the Court has here.

14  We'll impose the maximum fine that will be imposed.

15  I'm going to impose a period of probation as well, and

16  it will be a relatively short period of probation, and

17  I think we'll just kind of let it self-function.  I'm

18  not sure I'm comfortable putting any kind of

19  limitations.  We hope this sale goes through, but

20  sometimes it takes longer than we think, or sometimes

21  things come up at the last minute, and so we'll have a

22  period -- a chunk of time in which we can continue to

23  supervise this corporate entity, if needed.

24          So I'll articulate this sentence, and then if

25  there's no objection to the actual sentence or the

1 process, it will be imposed as follows:

2          Pursuant to the Sentencing Reform Act of

3 1984, as modified by the subsequent case law, the

4 Court finds that the following sentence is sufficient,

5 but not greater than necessary, to comply with the

6 purposes of 18 United States Code, Section 3553(a).

7          Accordingly, it's the judgment of the Court

8 that the defendant Tailor Made Compounding, LLC is

9 hereby sentenced to a term of probation of three

10 years, and it could ultimately be terminated on the

11 sale of the assets.  But rather than do that, we'll

12 just kind of let it exist out there and -- then just

13 to make sure that we have some monitoring that can

14 take place.

15          While on probation, of course, the defendant

16 organization shall not commit another federal, state,

17 or local crime, and then the defendant shall also

18 abide by the following special conditions:

19          It must comply with all regulations as set

20 forth in the federal Food, Drug, and Cosmetic Act of

21 21 United States Code, Section 301.

22          Based on the financial situation of the

23 corporation, I'll impose a $1,000 fine in this matter.

24          The corporation will be required to pay to

25 the United States also a special assessment of $125,

1  which is due immediately.

2          And as noted already on the record, the

3  defendant will forfeit to the United States all

4  interest in the property listed in the forfeiture

5  allegation of the information, specifically a money

6  judgment in the amount of $1,788,906.82.

7          Counsel, any objection to that sentence or

8  the process we've used here today?

9          MS. SMITH:  No, Your Honor.

10         MR. MARSHALL:  No, Your Honor.  Thank you.

11         THE COURT:  All right.  You can be seated.

12         We'll notify you in writing as the corporate

13  representative of any appeal rights that the

14  corporation may have, so we'll have that document

15  tendered to Mr. Marshall.  Take a moment and sign one

16  of those, sir.

17         MR. MARSHALL:  Yes, sir.

18         THE COURT:  And we'll file that in the

19  record.

20         The corporate defendant has signed the notice

21  of appeal rights, which we'll file in the record in

22  this case, and order a judgment of the conviction be

23  prepared for the corporate defendant as well.

24         Mr. Delk, have you understood these

25  proceedings?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Any questions about what's

3   occurred here today?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  Well, good luck to you,

6   sir.

7          Any other matters I need to address for the

8   United States?

9          MS. SMITH:  No, Your Honor.  Thank you.

10          THE COURT:  Okay.  Anything for either the

11  defendants, Mr. Brammell?

12          MR. BRAMMELL:  No, Your Honor.

13          THE COURT:  Mr. Marshall?

14          MR. MARSHALL:  Thank you, Your Honor.

15          THE COURT:  All right.  Thank you all for

16  your representation.

17          We'll stand in recess, pending the next item

18  on my docket.

19          [PROCEEDINGS ADJOURNED AT 12:08 p.m.]

20                       * * * * *

21          I, SANDRA L. WILDER, RMR, CRR, certify that

22  the foregoing is a correct transcript from the record

23  of proceedings in the above-entitled matter.

24  /s/ Sandra L. Wilder RMR, CRR     Date of Certification:
    Official Court Reporter           April 8, 2021

25